IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EDWAR JOSE AQUINO DELGADO, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 1:26-CV-2285-RP |
| | § | |
| FACILITY ADMINISTRATOR, T. DON HUTTO RESIDENTIAL CENTER, et al., | § | |
| | § | |
| | § | |
| Respondents. | § | |

**ORDER**

Before the Court is Pro Se Petitioner Edwar Jose Aquino Delgado's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, filed on August 19, 2026. (Pet., Dkt. 1). On August 21, 2026, pursuant to 28 U.S.C. § 2243, the Court ordered Respondents to show cause within three days as to why the petition should not be granted. (Dkt. 4). On August 24, 2026, Respondents Markwayne Mullin, Todd Blanche, and Field Office Director of the San Antonio Field Office, U.S. Immigration and Customs Enforcement[1] (together, "Respondents"), filed a response in opposition. (Dkt. 5). On September 30, 2026, the Court ordered Respondents to provide the Court with supplemental briefing. (Dkt. 10). Respondents did so.[2] (Dkt. 13). Having considered the parties' arguments, the evidence presented, and the relevant law, the Court will grant Petitioner's Petition for Writ of Habeas Corpus.[3]

---

[1] The Response is filed only on behalf of the federal employees in this action. (Resp., Dkt. 5, at 1 n.1; Suppl. Resp., Dkt. 13, at 1 n.1).

[2] Respondents filed a motion for an extension of time after 5:00 p.m. on the day their supplemental briefing was due to the Court. The Court granted the extension, (Dkt. 12), but warned Respondents that they must comply with court orders. The Court explained that if Respondents seek an extension of time, the request should be made in advance of the deadline (not past 5:00 p.m. on the day the response is due), and the request should articulate good cause for modifying the deadline. (Order, Dkt. 12).

[3] The Court is aware of the Fifth Circuit's July 21, 2026 Order granting the government's request to "issue a precedential order staying the district courts' judgments pending en banc review" of the panel's now-vacated opinion holding that certain applicants for admission can only be mandatorily detained for 90 days under 8 U.S.C. § 1225(b)(2)(A) without a bond hearing. *Sosnava Rodriguez v. Ortega*, No. 26-50183, Dkt. 178-1 at 13

## I. BACKGROUND

Petitioner, a Venezuelan national, is detained at the T. Don Hutto Detention Center located in Taylor, Texas. (Pet., Dkt. 1, at 10). On or about August 26, 2022, Petitioner entered the United States and was "processed" by U.S. Customs and Border Patrol ("CBP") near San Luis, Arizona. (*Id.* at 11). Petitioner was subsequently granted parole pursuant to Section 212(d)(5) of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1182(d)(5)). (*Id.*; Form I-213, Dkt. 1-5, at 7). Petitioner's parole expired November 2, 2022. (Pet., Dkt. 1, at 11). After Petitioner's parole expired, he applied

---

(5th Cir. July 10, 2026); *see Sosnava Rodriguez v. Ortega*, 183 F.4th 387 (5th Cir. 2026) (en banc). The Court is also aware of the Fifth Circuit's August 27, 2026 Order in a separate case, *Tolentino-Rodriguez v. Blanche*, No. 26-20424, Dkt. 32-1, at 3 (5th Cir. Aug. 27, 2026), granting the government's request for a written "opinion that confirms the controlling effect of the *Rodriguez* stay order" and a stay of the "district court's judgments pending appeal," *id.*, Dkt. 12, at 12. The Fifth Circuit granted the government's stay motion without analysis or explanation. After careful consideration, the Court finds persuasive the reasoning of sister courts in this District that the interim stay order does not prohibit its continued resolution of pending immigration habeas petitions on due process grounds. *See Tiquiram v. Warden, Dilley Immigr. Processing Ctr., et al.*, No. SA-26-CV-04473-OLG, 2026 WL 2242499, at *1 n.1 (W.D. Tex. July 31, 2026) (collecting cases).

First: while the Fifth Circuit stayed the three judgments before it on appeal pending its ultimate determination on the merits of the due process issue, *Sosnava Rodriguez*, 2026 WL 2104747 at *1, a stay order "'does not make or signal any change to the law' and 'is not a ruling on the merits.'" *Estrada v. Ybarra*, No. 26-CV-1897-KC, 2026 WL 2168090, at * 1 (W.D. Tex. July 28, 2026) (quoting *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring) (citation modified)).

Second: unlike typical precedential orders, the July stay order "was issued without any explanation [or] analysis." *Estrada*, 2026 WL 2168090, at *1−2. This Court, like its sister courts, finds that it cannot "infer directives of constitutional magnitude from the Fifth Circuit where none have been given." *Camacho v. Dep't of Homeland Sec.*, No. 26-CV-01717-DB, 2026 WL 2137156, at *3 (W.D. Tex. July 24, 2026). The Court also reads the August 27, 2026 Order as staying only the cases on appeal pending its ultimate determination on the merits of the due process issue. *See id.*

Third: the constitutional writ of habeas corpus requires expeditious resolution and "must not be allowed to founder in a procedural morass." *Harris v. Nelson*, 394 U.S. 286, 291 (1969) (citation modified); *see* 28 U.S.C. § 2243 ("A court . . . entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted."). The Court concludes that staying dozens of habeas proceedings challenging mandatory detention under § 1225(b)(2)(A) is precisely the type of directive of constitutional magnitude it cannot infer from a stay, issued in a separate case, and without either analysis or clarity as to its scope. *See Tiquiram*, 2026 WL 2242499, at *1 n.1. As such, the Court will proceed with its resolution of such challenges unless "told to do otherwise." *Estrada*, 2026 WL 2168090, at *2 (citation modified) (collecting cases).

for Temporary Protected Status while he was living in the United States. (Receipt of I-94, Dkt. 1-5, at 4–5). Petitioner's application was granted on October 31, 2024. (*Id.*).

On August 12, 2026, Petitioner was detained by ICE during a traffic stop. (Pet., Dkt. 1, at 13–14). Since being detained, Petitioner has not received a custody redetermination hearing. (*Id.* at 19). Petitioner challenges his detention through a writ of habeas corpus under 28 U.S.C. § 2241. Petitioner brings statutory and constitutional claims, including that his ongoing detention without bond hearing is unlawful in violation of his Fifth Amendment Due Process rights. (Pet., Dkt. 1, at 15–18).

Respondents initially asserted detention authority pursuant to 8 U.S.C § 1229c(a), which governs voluntary departure. Respondents did so because Petitioner had initially signed a document agreeing to voluntarily depart from the United States. (Resp., Dkt. 5, at 1; Voluntary Departure and Verification of Departure, Dkt. 5-1). Respondents explained that "[v]oluntary departure is the result of an agreed-upon exchange of benefits between an alien and the government. It is not granted 'unless the alien requests such voluntary departure and agrees to its terms and conditions.'" (Resp., Dkt. 5, at 1 (quoting *Banda-Ortiz v. Gonzalez*, 445 F.3d 387, 389 (5th Cir. 2006))). Petitioner, however, pled that his request to voluntarily depart was made under "pressure[]" and "[h]e did not understand the document" as "[n]o one explained it to him in a manner he understood" and "[h]e was not provided an interpreter." (Pet., Dkt. 1, at 14). Petitioner "believed that he had no choice." (*Id.*). "Petitioner did not know and did not intend that by signing he was surrendering his right to a hearing. He does not accept the document, and he wishes to defend his case." (*Id.* at 15).

Given the discordance between the facts pled and Respondents' assertion of detention authority, the Court issued an order requiring Respondents to explain whether Petitioner withdrew his voluntary departure request, and in the event that he had done so, to identify the specific detention authority being applied. (Order, Dkt. 10, at 2). Respondents, in their supplemental

response, explain that "ICE . . . consider[s] Petitioner to have withdrawn his request to voluntary [sic] depart the United States. ICE has served Petitioner with a Notice to Appear placing him in regular removal proceedings."[4] (Suppl. Resp., Dkt. 13, at 1; Notice to Appear, Dkt. 13-1). Respondents then assert detention authority under 8 U.S.C. § 1225(b)(2)(A), as Petitioner is "an applicant for admission in removal proceedings under 8 U.S.C. § 1229a," and "is barred from seeking bond from an immigration judge." (Suppl. Resp., Dkt. 13, at 9). Respondents argue that because Petitioner's parole expired in 2022, Petitioner "returned to the custody from which he was paroled" at that time, meaning that Petitioner's case is to be "dealt with in the same manner as that of any other applicant for admission to the United States." (*Id.* at 8–9). Respondents further assert that Petitioner's "temporary protected status expired April 2, 2025," and as a result, Petitioner "return[ed] to the same immigration status or category that [he] maintained before TPS." (Resp. to Pet., Dkt. 5, at 2–3).

## II. DISCUSSION

This Court previously interpreted 8 U.S.C. § 1225(b)(2) as not applying to noncitizens like Petitioner who have been residing in the country for years, as opposed to a noncitizen present in the United States who has recently arrived and is actively seeking admission. *See, e.g.*, *Guzman v. Bondi*, 814 F. Supp. 3d 761 (W.D. Tex. 2025). This interpretation was rejected by a Fifth Circuit panel. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). *Buenrostro-Mendez* addressed only statutory interpretation. By contrast, it did not examine whether Petitioner's ongoing detention

---

[4] Respondents no longer purport to detain Petitioner pursuant to 8 U.S.C § 1229c(a). (Suppl. Resp., Dkt. 13). Respondents explain that "ICE . . . consider[s] Petitioner to have withdrawn his request to voluntary [sic] depart." (*Id.* at 1). As Respondents assert detention authority pursuant to § 1225(b)(2)(A) and ICE states that Petitioner has withdrawn his voluntary departure request, the Court considers the voluntary departure agreement to no longer be in effect. *See Dada v. Mukasey*, 554 U.S. 1, 21 (2008) (holding a noncitizen may withdraw a request for voluntary departure at any time before the expiration date); *Bonilla v. Bondi*, 826 F. Supp. 3d 367, 373 (E.D.N.Y. 2026) (concluding that ICE did not have authority to detain a Petitioner pursuant to a voluntary departure agreement "which is no longer in effect and was procured under duress").

without access to a bond hearing violates the Constitution. *Id.*[5] As such, the Court turns to Petitioner's independent claim for release under the Due Process Clause.

"Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Noncitizens are entitled to due process of the law under the Fifth Amendment. *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025); *Demore v. Kim*, 538 U.S. 510, 523 (2003).

Respondents first argue that Petitioner's parole expired in 2022, before later taking the position that his parole expired when the Department of Homeland Security ("DHS") terminated the Venezuela TPS designation on February 5, 2025. (Suppl. Resp., Dkt. 13, at 8-9 (citing TERMINATION OF THE OCTOBER 3, 2023 DESIGNATION OF VENEZUELA FOR TEMPORARY PROTECTED STATUS, 90 Fed. Reg. 9040 (Feb. 5, 2025)). "Petitioner does not ask th[e] Court to adjudicate his entitlement to Temporary Protected Status," so the Court assumes without deciding that Petitioner's parole expired.[6] (Suppl. to Pet., Dkt. 7, at 10). Respondents suggest that once Petitioner's parole expired, he is treated for due process purposes as "any other applicant for admission to the United States." (Resp., Dkt. 13, at 9–10 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 91 U.S. 103, 140 (2020)). Contrary to Respondents' arguments, "*Thuraissigiam* does not foreclose [Petitioner's] due process claims." *Ochoa v. Vergara*, 821 F. Supp. 3d 680 (W.D. Tex. 2026) (quoting *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, at *7 (W.D. Tex. Oct. 21, 2025)). There are "two key points of distinction between *Thuraissigiam* and [Petitioner's] case." *Lopez-*

---

[5] Indeed, the Government's counsel stated during oral argument: "We have one issue before the Court now: the statutory question. . . . There's not, in other words, a due process claim here." Oral Argument, *Buenrostro-Mendez v. Bondi*, No. 25-20496, at 44:56–45:11 (5th Cir. Feb. 3, 2026), *available at* https://www.ca5.uscourts.gov/OralArgRecordings/25/25-20496_2-3-2026.mp3.

[6] The parties do not dispute that Petitioner was paroled for some time, and the Court finds that Petitioner accrued a due interest in liberty while he was paroled, which entitles him to an individualized determination. *Marceau v. Noem*, No. EP-26-CV-237-KC, 2026 WL 368953 (W.D. Tex. Feb. 9, 2026).

*Arevelo v. Ripa*, 801 F. Supp. 3d 668, 682 (W.D. Tex. 2025). First, unlike the petitioner in *Thuraissigiam*, Petitioner does not challenge the admission process in any way or assert a right to remain in the United States. *See Thuraissigiam*, 591 U.S. at 140 ("For these reasons, an alien in respondent's position has only those rights regarding *admission* that Congress has provided by statute.") (emphasis added). Petitioner "merely seeks a chance to apply for release . . . [and] [n]othing in *Thuraissigiam* suggests [he] lacks such a due process right." *Hernandez-Fernandez*, 2025 WL 2976923, at *8. A "second key point of distinction is that Thuraissigiam was stopped by Border Patrol 'within twenty-five yards of the border,' immediately detained, and never released." *Id.* By contrast, Petitioner has lived in the United States for four years. For constitutional purposes, Petitioner's time living in the United States differentiates him from the petitioner in *Thuraissigiam* because "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Th[is] distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."[7] *Id.*

For these same reasons, the Court also notes that the expiration of Petitioner's parole does not override or diminish the constitutional concern of Petitioner's liberty interest in his freedom from detention. *See Marceau v. Noem*, No. EP-26-CV-237-KC, 2026 WL 368953 (W.D. Tex. Feb. 9, 2026) ("[E]ven if Respondents' contention that [Petitioner] is an 'arriving alien' is correct as a matter of statutory construction, [Petitioner's] constitutional interest in [his] liberty exists above and apart from the [INA] and attendant regulations. . . . [Petitioner] was paroled and released into the country, where [he] has been living at liberty for over two years. Regardless of whether [Petitioner's] parole has expired or been terminated, Respondents may not revoke that liberty without an individualized

[7] *See Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859, at *4 (W.D. Tex. Oct. 21, 2025) (finding that noncitizens present in the United States who have "established a life here—albeit without authorization—[] possess[] a strong liberty interest in their freedom from detention").

determination of the need to do so.") (citing *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025)); *Rodriguez v. Bondi*, 821 F. Supp. 3d 727, 730 (W.D. Tex. 2026) (in granting release for a Petitioner whose parole under 8 U.S.C. § 1182(d)(5)(A) had also expired prior to his detention, holding that because "noncitizens who have established connections in the United States by virtue of living in the country for a substantial period acquire a liberty interest in being free from government detention without due process of law" and "the Government released Petitioner and permitted him to live in the United States for over three years, they cannot revoke that liberty without an individualized determination of the need to do so") (citation and quotation marks omitted). And, again, the Court here is considering Petitioner's claims as to his alleged unlawful detention, *not* his admissibility or removability. *See Valencia Reyes v. Noem*, 5:25-CV-1921-XR, Dkt. 7, at *12 (W.D. Tex. Feb. 25, 2026) ("The distinction between removal and detention—the very basis for this Court's jurisdiction over Petitioner's claims here—are clear. Not all who are detained will ultimately be removable.").

Beyond their arguments based on *Thuraissigiam*, Respondents also argue that (1) Petitioner is raising a substantive due process claim rather than a procedural due process claim because, as in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), (1) his "claims challenge the substance of the law, not the procedure"; and (2) because individualized findings regarding flight risk and danger are irrelevant to § 1225(b)(2), under the reasoning in *Wekesa v. United States Att'y*, No. 22-10260, 2022 WL 17175818 (5th Cir. Nov. 22, 2022) (per curiam), Petitioner has no procedural due process right to a bond hearing on flight risk or danger to the community.[8] (Suppl. Resp., Dkt. 13, at 10–12).

---

[8] Respondents also cite for support the cases *Kaplan v. Tod*, 267 U.S. 228 (1925) and *Landon v. Plasencia*, 459 U.S. 21 (1982). Both cases are inapposite. The Supreme Court's analysis in *Kaplan* focused on statutory construction, and it related to whether the Petitioner could "*be deported* upon a warrant issued more than five years after her entry into the United States." *Kaplan*, 267 U.S. at 230 (holding that the noncitizen had "never . . . been dwelling in the United States *within the meaning of the Act*" and stating that the two questions presented were whether the noncitizen became a citizen by the naturalization of her father and whether she could be deported five years after entering the country) (emphasis added). As to *Landon*, that case involved

The Court finds neither of these arguments to be persuasive. As to the first argument, the Court finds that *Doe* is highly distinguishable. In that case, the litigant was challenging the requirement for him to register as a sex offender without a hearing on the topic of whether he was "currently dangerous," though the statutory scheme at issue did not consider that factor. *Doe*, 538 U.S. at 4. The Supreme Court held that, because the determination sought by the litigant in such a hearing would have no bearing on the outcome, he had no procedural due process right to such a hearing. *Id.* at 7–8. The Court finds this reasoning to be inapplicable to this case for two reasons. For one, as a sister court in this District has already noted, *Doe* "arose in an entirely different context" than "an immigration detainee's challenge to their detention without a bond hearing." *Hernandez, v. ICE Field Off. Dir.*, No. EP-26-CV-67-KC, 2026 WL 503958, at *2 (W.D. Tex. Feb. 23, 2026). Given that "[f]reedom from imprisonment . . . lies at the heart of the liberty that [the Due Process] Clause protects," *Zadvydas*, 533 U.S. at 690, this Court similarly does not find that a case about registering as a sex offender is directly on point. Second, as described previously in this Section, whether or not Petitioner is a flight risk or a danger *is* relevant to Petitioner's detention. Though Respondents frequently describe detention under 8 U.S.C. § 1225(b) as "mandatory detention," noncitizens who are detained under § 1225(b) *may* be released on parole for "humanitarian reasons or significant public benefit," so long as they "present neither a security risk

---

the due process rights of a noncitizen who was "*outside* the United States, seeking admission *into* the United States, based on established 'ties' to the country." *D.V.D. v. U.S. Dep't of Homeland Sec.*, 821 F. Supp. 3d 102, 151 n.78 (D. Mass. 2026) (citing *Landon*, 459 U.S. at 32–34), *aff'd in part and vacated in part*, --- F.4th ---, 2026 WL 2791801 (1st Cir. Sept. 18, 2026). Thus, neither of these cases are relevant to the Court's analysis.

nor a risk of absconding."[9] *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b). Thus, a determination that Petitioner is neither a flight risk nor a danger is in fact not irrelevant, unlike in *Doe.*[10]

Second, Respondents' argument based on *Wekesa* is similarly unavailing. As a sister court in this District has explained, the Fifth Circuit only "fleetingly noted that Wekesa raised a due process challenge, [but] it did not address that argument or the facts underlying the case in its brief order, and neither did the district court." *Lopez-Arevelo*, 801 F. Supp. 3d at 683. Moreover, *Wekesa* is an unpublished opinion with no binding precedential value, and like the *Lopez-Arevelo* Court, this Court finds it unpersuasive. *See id.* The Court makes this determination particularly due to the fact that *Wekesa* involved a "due process challenge to prolonged, mandatory detention under § 1226," while this case "challenges the decision to subject [Petitioner] to mandatory detention under § 1225(b) at all, without any process or individualized reasons, after he spent [four] years" at liberty within the United States. *See id.* at 683–84.

Because Petitioner validly makes a due process argument, the Court will address whether Petitioner has succeeded on his procedural due process claim under *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Valencia Reyes*, 5:25-CV-1921-XR, Dkt. 7, at *15 ("[F]or noncitizens who have entered or otherwise been released into the interior and established a substantial presence in the United States, the 'entry fiction' applicable to their removal proceedings gives way to their interest in freedom from detention under *Mathews v. Elridge.*"). "To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319

[9] *See Aguilar v. Bondi*, 811 F. Supp. 3d 815, 820 n.1 (W.D. Tex. Nov. 26, 2025) ("The Court recognizes that, while the phrase 'mandatory detention' is often used to describe detention under 8 U.S.C. § 1225(b), the phrase is somewhat of a misnomer, as courts have acknowledged that one detained under § 1225(b) may still obtain release through parole for 'urgent humanitarian reasons or significant public benefit.'").

[10] The Court also agrees with the reasoning of its sister court that the distinction between substantive and procedural due process in this context is not helpful, as "the two concepts are not mutually exclusive, and their protections often overlap." *See Valencia Reyes v. Noem*, 5:25-CV-1921-XR, Dkt. 7, at 9–10 (W.D. Tex. Feb. 25, 2026) (quoting *Albright v. Oliver*, 510 U.S. 266, 302 (1994) (Souter, J., concurring)).

(1976)." *Martinez v. Noem*, No. 5:25-CV-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025). Those factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

All three *Mathews* factors weigh in Petitioner's favor. First, "[b]ecause he spent [four years] at liberty in the United States, [Petitioner] possesses a cognizable interest in his freedom from detention." *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, at *9 (W.D. Tex. Oct. 21, 2025). This interest "deserves great weight and gravity." *Vieira v. De Anda-Ybarra*, No. EP-25-CV-00432-DB, 2025 WL 2937880, at *6 (W.D. Tex. Oct. 16, 2025) (citations omitted). The second factor—the risk of erroneous deprivation—also weighs strongly in favor of Petitioner. Petitioner lacks any opportunity to contest the reasonableness of his detention, meaning the risk of erroneous deprivation lies in this "automatic continued deprivation of liberty for a noncitizen." *Id.* at *7. As to the third factor, "Respondents, of course, have a generalized interest in ensuring noncitizens appear for their removal hearings and do not pose a risk to the communities in which they live." *Id.* at *6. "In any event, if such concerns exist, they would be squarely addressed" at a bond hearing. *Lopez-Arevelo*, 801 F. Supp. 3d at 687. Regardless, the government "conducted [bond hearings] for decades until its reinterpretation of the law earlier this year," reducing any purported interest in ceasing to hold bond hearings. *Id.* (citations omitted). As such, all three factors favor Petitioner, and the Court finds that Petitioner's detention without any opportunity to challenge his detention through a bond hearing violates the Due Process Clause.

Federal district courts in Texas, including this Court, have likewise found that similar instances of detention violated a Petitioner's right to procedural due process. *See, e.g.*, *id.*; *Ochoa*, 821

F. Supp. 3d at 684-85; *Vieira*, 2025 WL 2937880, at *7 ("In sum, Section 1225(b)(2) as applied to Petitioner violates his Fifth Amendment Due Process rights."); *Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859, at *3 (W.D. Tex. Oct. 21, 2025) ("[T]he Court does not reach the statutory interpretation question because, assuming without finding that the Government's new interpretation is correct, [petitioner] is entitled to due process and succeeds in his as-applied challenge."); *Ortega-Aguirre v. Noem*, No. 4:25-CV-04332, 2025 WL 3684697, at *3 (S.D. Tex. Oct. 10, 2025) ("Here, the Court finds that Petitioner is likely to prevail on the merits of his due process claim because he 'has been detained since August of 2025 without any individualized assessment of flight risk or dangerousness.'"); *Cordova v. Noem*, No. 3:26-CV-97-K-BN, 2026 WL 218938, at *3 (N.D. Tex. Jan. 28, 2026) ("[T]he Court holds that denying Petitioner a bond hearing under § 1225(b)(2) deprives him of procedural due process protections under the Fifth Amendment."); *Camacho-Gutierrez v. Thompson*, No. 5:25-CV-01876-MA, 2026 WL 195758, at *5 (W.D. Tex. Jan. 16, 2026) ("[T]he Court finds that Petitioner's detention without any notice or an individualized assessment deprives her of the constitutional right to procedural due process."); *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, at *10 (W.D. Tex. Oct. 21, 2025) (finding "that detaining [petitioner] without any individualized assessment of his flight risk and dangerousness deprives him of his constitutional right to procedural due process," and collecting cases); *George v. Noem*, No. 3:25-CV-2935-S-BW, 2025 WL 3852946, at *4 (N.D. Tex. Dec. 19, 2025), *report and recommendation adopted*, No. 3:25-CV-02935-S-BW, 2026 WL 30829 (N.D. Tex. Jan. 5, 2026) ("[D]etaining [petitioner] without a bond hearing violates his Fifth Amendment rights."). Federal district courts in Texas have also made this finding subsequent to the Fifth Circuit issuing its opinion in *Buenrostro-Mendez*. *See, e.g.*, *Hassen v. Noem*, No. EP-26-CV-00048-DB, 2026 WL 446506, at *2 & n.1 (W.D. Tex. Feb. 9, 2026) (holding that *Buenrostro-Mendez* "does not change this case's outcome on procedural due process grounds"); *Clemente Ceballos v. Garite*, No. EP-26-CV-00312-DB,

2026 WL 446509, at *2 & n.2 (W.D. Tex. Feb. 10, 2026) (same); *Marceau*, 2026 WL 368953, at *2 (W.D. Tex. Feb. 9, 2026) ("The Court's conclusion is not changed by the Fifth Circuit's recent decision in *Buenrostro-Mendez* . . . *Buenrostro-Mendez* has no bearing on this Court's determination of whether [petitioner] is being detained in violation of [his] constitutional right to procedural due process."); *Mendoza v. Noem*, No. 5:26-CV-728-JKP, Dkt. 9, at *7 (W.D. Tex. Feb. 26, 2026) (holding that *Buenrostro-Mendez* "only addresses a statutory claim" and "did not address and does not preclude consideration of constitutional and other claims"). This Court agrees with the Due Process Clause analysis in the above cases, and finding a constitutional violation, it need not reach the other issues briefed by the parties.

Turning to relief, in habeas cases where the Court finds an ongoing detention unlawful, "the typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "In recent months, courts across the country have ordered the release of detainees in similar situations." *Moctezuma v. Henkey*, No. 1:25-CV-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (ordering immediate release and collecting cases across jurisdictions); *Cruz-Reyes v. Bondi*, 5:26-CV-60, 2026 WL 332315, at *13 (S.D. Tex. Feb. 3, 2026) ("[D]ue process concerns weigh heavily in favor of granting immediate release."); *Santiago v. Noem*, No. EP-25-CV-361, 2025 WL 2792588, at *13−14 (W.D. Tex. Oct. 2, 2025) (collecting cases and finding that "immediate release appropriately remedies Respondents' violation of [Petitioner's] due process rights through her continued detention."); *Mendoza v. Noem*, No. 5:26-CV-728-JKP, Dkt. 9, at *16–18 (W.D. Tex. Feb. 26, 2026) (quoting *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 320-21 (E.D.N.Y. 2025)) (explaining, after finding a due process violation, that release is the proper remedy rather than a bond hearing because "a post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity to relief because the detention without adequate pre-deprivation

procedures has already been carried out.”). The Court agrees that the appropriate remedy for unlawful detention is release and will order Petitioner’s immediate release.

## III. CONCLUSION

The foregoing order constitutes the Court’s findings of fact and conclusions of law. For the reasons discussed above, **IT IS ORDERED** that Petitioner’s Petition for Writ of Habeas Corpus, (Dkt. 1), is **GRANTED** as follows. All relief not granted is **DENIED**.

1. Upon receipt of this order, Respondents shall immediately release Petitioner from custody;

2. Respondents shall release Petitioner under conditions no more restrictive than those in place prior to the detention at issue in this case, and shall return Petitioner’s identification documents and possessions upon his release;

3. As soon as is practicable, and no less than two hours before release, Respondents shall notify any identifiable next-of-kin of the exact location and time of Petitioner’s release;

4. Respondents are enjoined from further detaining Petitioner under the statutory authority asserted here, without first conducting a bond hearing, scheduled with notice to Petitioner and set at a date agreed upon by both parties. At such a hearing, Respondents bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Petitioner’s detention.

**IT IS FURTHER ORDERED** that Respondents shall provide a status report **on or before October 15, 2026**, detailing their compliance with this Order.

**IT IS FINALLY ORDERED** that in light of the foregoing Order, Petitioner’s Motion for Release, (Dkt. 2), is **MOOT**.

**SIGNED** on October 13, 2026.



ROBERT PITMAN
UNITED STATES DISTRICT JUDGE